1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

ARVCO CAPITAL RESEARCH, LLC, et. al.,

Defendants.

3:12-cv-00221-MMD-WGC

**ORDER**

Re: Motion to Compel Third Party Witness,
Dustin Fox, to Answer Questions at
Deposition (Doc. # 76)

12
13
14
15
16
17
18
19
20
21

Before the court is the Motion to Compel Third Party Witness, Dustin Fox, to Answer Questions at Deposition filed by defendants ARVCO Capital Research LLC, ARVCO Financial Ventures, LLC (collectively, ARVCO) and Alfred J.R. Villalobos (Villalobos). (Doc. # 76.) Dustin Fox (Fox) filed a response. (Doc. # 82.) ARVCO and Villalobos filed a reply. (Doc. # 84.) The United States filed a memorandum weighing in on this issue. (Doc. # 87.) Counsel for ARVCO and Villalobos, Marc E. Rohatiner filed a declaration in response to the United States' memorandum, requesting that the court not consider the memorandum or continue the hearing so that he had a chance to file a formal response. (Doc. # 88.) The Securities and Exchange Commission (SEC) also filed a document briefly stating its position and requested that the court consider the United States' memorandum. (Doc. # 90.)

22
23
24
25
26
27

The court held a hearing on this motion on October 7, 2014, and concluded that Fox had not waived his right to invoke the Fifth Amendment privilege against self-incrimination at his deposition in this proceeding when he represented at a June 27, 2014 hearing in this case that he would not be invoking the privilege. As such, the court denied the motion to compel (Doc. # 76) filed by ARVCO and Villalobos. The court issues the instant Order setting forth the relevant background as well the rationale for its decision.

28

///

# I. BACKGROUND

**A. Litigation History Leading Up to This Motion**

The SEC filed this civil enforcement action against defendants ARVCO, Villalobos, and Federico ("Fred") R. Buenrostro (Buenrostro). (Doc. # 1.) The complaint alleges an allegedly fraudulent scheme perpetrated by Buenrostro, the former Chief Executive Officer of the California Public Employees' Retirement System (CalPERS), and his close friend, Villalobos, an agent who places investment funds, who convinced CalPERS and other public pension funds to invest in his clients, mostly private equity funds, through his two companies, ARVCO Capital Research, LLC and ARVCO Financial Ventures, LLC. The SEC avers that Villalobos developed a longstanding and lucrative relationship with one particular investment manager, Apollo Global Management (Apollo), and in 2007, Apollo began to require signed investor disclosure letters from investors such as CalPERS from whom it raised money with the assistance of a placement agent (such as ARVCO) before Apollo would pay that placement agent any fees.

The SEC contends that ARVCO first agreed to this contractual provision in its placement agreement regarding Apollo Fund VII in the summer of 2007. Just before CalPERS' investment in the Apollo Fund VII was closed in August 2007, ARVCO's general counsel emailed CalPERS' investment office to request that it sign the investor disclosure letter. CalPERS informed ARVCO it had been advised by counsel not to sign the letter. That was the last CalPERS heard from ARVCO about investor disclosure letters. Apollo's counsel then requested the signed CalPERS disclosure letter for the Apollo Fund VII from ARVCO, and refused to pay ARVCO any placement fees on the investment until it received the letter. On January 2, 2008, Apollo's counsel discussed with ARVCO's counsel whether Apollo should contact CalPERS directly to request the signed disclosure letter; however, instead of this occurring, Villalobos allegedly generated a letter using the CalPERS logo on Buenrostro's business card and, at Villalobos' request, Buenrostro signed what appeared to be an Apollo Fund VII disclosure letter purportedly on behalf of CalPERS.

The SEC claims that Villalobos and Buenrostro carried on this scheme to create the false impression that the disclosure letters were properly reviewed and approved by CalPERS, when in

1   fact its procedures had been bypassed. Upon receipt of the fabricated letters, the SEC contends

2   that Apollo paid ARVCO about $3.5 million in placement agent fees. In addition, the SEC

3   contends that Villalobos and Buenrostro created fabricated CalPERS documents regarding at

4   least four more Apollo funds, inducing Apollo to pay ARVCO more than $20 million in

5   placement agent fees it would not have paid without the disclosure letters.

6       On March 14, 2013, a grand jury sitting in the Northern District of California returned a

7   multi-count indictment against Villalobos and Buenrostro in *United States v. Alfred J. Villalobos*

8   *and Federico Buenrostro, Jr. (aka Fred Buenrostro)*, CR 13-0169 CRB. (Doc. # 187 at 5.) Both

9   men initially pled not guilty to all charges. (*Id.*) Buenrostro has since pled guilty to a superseding

10  information charging him with conspiracy to commit bribery and honest services fraud and to

11  defraud the United States, in violation of 18 U.S.C. § 371. (*See* Doc. # 71 at 2:23-26; Doc. # 87

12  at 6.) The criminal case is proceeding to trial on February 23, 2015 as to Villalobos. (*See*

13  Minutes at Doc. # 73; Doc. # 87 at 6.)

14      On June 20, 2013, the United States of America (United States) filed a motion to permit it

15  to intervene in this action to request an order staying discovery and sought an order temporarily

16  staying discovery until the conclusion of the pending criminal case. (Doc. # 41.) The court held a

17  hearing on the motion on July 10, 2013, and issued its written order on July 16, 2013. (Docs.

18  # 51, # 53.) The court granted the United States' motion to intervene for the limited purpose of

19  seeking a stay of discovery; however, the court denied the motion to stay discovery pending

20  conclusion of the criminal action. (*Id.*) The United States filed objections to the court's order.

21  (Docs. # 54, # 56.) The court temporarily stayed discovery pending resolution of the objections.

22  On January 6, 2014, District Judge Miranda M. Du, overruled the objections. (Doc. # 58.)

23      Fox is a non-party witness who was employed by ARVCO and Villalobos during the time

24  the investment disclosure letters were allegedly prepared and has personal knowledge about their

25  preparation, execution and disposition. (Doc. # 82 at 7, 18 ¶ 12.) This issue is central to this

26  action as well as the pending criminal action. He has provided various interview statements to

27  the United States Attorney's Office and California Attorney General's Office, as well as grand

28  jury testimony in connection with the criminal proceeding related to the preparation of the

investor disclosure letters. (*See* Doc. # 82 at 3; Doc. # 87 at 4.) He was given limited use immunity for his grand jury testimony. (Doc. # 87 at 4.) He has not yet received additional immunity for the interviews given to the United States Attorney's Office (Doc. # 82 at 17); however, he has apparently been given an offer of immunity related to statements he made to the California Attorney General's Office, but has not yet accepted the offer. (Doc. # 84 at 12 n. 1.)

Villalobos and ARVCO sought to depose Fox in this civil action. Counsel for Villalobos and ARVCO, Mr. Rohatiner, began his efforts to schedule Fox's deposition in May 2014, and Fox's counsel, Mr. Bitzer, originally agreed that Fox would appear for his deposition in Sacramento, California, on June 9, 2014, and that a subpoena would not be necessary. (Doc. # 76 at 2.) Then, to accommodate the schedule of counsel for the SEC, Mr. Rohatiner arranged through Mr. Bitzer to take Fox's deposition on June 19, 2014 instead. (*Id*.) At that time, Mr. Bitzer informed Mr. Rohatiner for the first time that Fox intended to invoke the privilege against self-incrimination under the Fifth Amendment and would not testify as to the relevant issues, *i.e.*, preparation of the investor disclosure letters. (*Id*. at 3.) In addition, Mr. Bitzer indicated that Fox would be playing in the World Series of Poker and was unavailable on June 19, 2014. (*Id*.) Mr. Rohatiner told Mr. Bitzer that if Fox intended to invoke the Fifth Amendment, he would argue that Fox had waived that privilege. (*Id*.)

Understandably, Mr. Rohatiner did not want to wait several weeks to take Fox's deposition only to have him invoke the Fifth Amendment which would result in Mr. Rohatiner filing a motion to compel. (*Id.*) It was agreed, therefore, that Fox's deposition would be continued to July 1, 2014 to allow Fox to file a motion for protective order. On June 24, 2014, Fox filed a motion to quash and/or modify the subpoena. (Docs. # 68, # 68-2, # 68-3.) In his motion, Fox asserted that he was not available to appear and testify on July 1, 2014, because he would be playing in the main event of the World Series of Poker in Las Vegas, Nevada. (Doc. # 68-2 at 2.) In addition, he indicated that he had previously agreed to appear and testify at a deposition on August 8, 2014, in this action and a companion California civil action, *People of the State of California v. Alfred Robles Villalobos, et. al.,* SC107850 (pending in the Los Angeles County Superior Court). (*Id.*) Fox also mentioned that he is a witness in the pending criminal

case. (*Id.* at 3.) As such, he sought an order that Villalobos and ARVCO proceed with his deposition on August 8, 2014. (*Id.* at 2.) He argued that there was no reason to depose him prior to August 8, 2014 in this action as discovery remained open, and posited that the only reason Villalobos and ARVCO wanted to depose him prior to this time was to attempt to improperly cross-examine him in advance of the criminal trial (which was then set to commence on July 21, 2014). (*Id.* at 3.) Notably, the motion did not mention any intention to invoke the Fifth Amendment privilege against self-incrimination at his deposition, whenever it was scheduled to occur.

The court held an expedited hearing on Fox's motion on June 27, 2014. (*See* Minutes at Doc. # 70.) At the hearing, the court asked Mr. Rohatiner why the deposition could not wait until August 8, 2014, and Mr. Rohatiner then informed the court that Fox had indicated he was going to invoke the Fifth Amendment, and Mr. Rohatiner did not want to wait until August 8, 2014 to begin the process of filing a motion to compel Fox's testimony. As a result, the court inquired of Fox whether he intended to invoke the Fifth Amendment on August 8, 2014, and Fox expressly stated that he would not assert his Fifth Amendment privilege against self-incrimination during his deposition. Based on that representation, Mr. Rohatiner indicated that he would have no problem rescheduling the deposition to August 8, 2014. In view of this, Fox's motion was denied as moot. (Doc. # 70 at 2.)

In the interim, the court held a status conference to discuss scheduling matters. (*See* Minutes at Doc. # 73.) In light of a continuance of the criminal trial and the time commitment the criminal proceeding would require of the parties and counsel, the court extended the discovery deadline in this action to April 17, 2015, with dispositive motions due on May 15, 2015, and a trial date of August 25, 2015. (*Id.*)

Subsequent to the June 27, 2014 hearing but prior to the August 8, 2014 deposition date, Mr. Rohatiner was informed by Mr. Bitzer that contrary to Fox's representation at the June 27, 2014 hearing, Fox did intend to invoke the Fifth Amendment at his deposition. This resulted in the filing of the instant motion by Villalobos and ARVCO to compel Fox to attend his deposition and to answer questions without invoking the Fifth Amendment on the basis that he waived this

privilege at the June 27, 2014 hearing. (Doc. # 76.) Villalobos, ARVCO and Fox stipulated that it was unnecessary for Mr. Rohatiner to wait and appear at the deposition where Fox would invoke the Fifth Amendment before filing this motion to compel. (Doc. # 81.) Fox has agreed to appear and testify at his deposition, but contends he has the right to assert all objections at his deposition, including his Fifth Amendment privilege against self-incrimination. (Doc. # 82 at 3.)

**B. Instant Motion (Doc. # 76)**

In their motion, Villalobos and ARVCO argue that Fox expressly waived his Fifth Amendment privilege against self-incrimination when he represented at the June 27, 2014 hearing that he would appear for his deposition on August 8, 2014, and would not invoke his Fifth Amendment privilege against self-incrimination. (Doc. # 76 at 2.) As such, Villalobos and ARVCO request an order that Fox be required to appear for his deposition and answer questions posed without invoking the Fifth Amendment. (*Id*.) Villalobos and ARVCO rely on *United States v. Anderson*, 79 F.3d 1522 (9th Cir. 1996), for the proposition that the Fifth Amendment privilege against self-incrimination is waived when an express assertion to do so is made. (*Id*. at 4-5.)

**C. Fox's Opposition (Doc. # 82)**

Fox argues that the Ninth Circuit supports his position that his statement at the June 27, 2014 hearing that he did not intend to invoke his Fifth Amendment privilege against self-incrimination at his deposition cannot form the basis of a blanket waiver of his Fifth Amendment rights. (Doc. # 82 at 2.) Preliminarily, Fox notes that his statement at the June 27, 2014 hearing was based on his assumption that he would receive derivative use immunity prior to the deposition from both the United States Attorney's Office and the California Attorney General's Office; however, to date, he has not received any additional immunity from either governmental agency. (*Id*. n. 1.)

Fox argues that he has the right to invoke the Fifth Amendment privilege against self-incrimination with respect to questions elicited at his deposition regarding the preparation, execution and disposition of the investment disclosure letters, and that he did not waive that right prospectively. (*Id*. at 7.) Fox relies on both *United States v. Anderson*, 79 F.3d 1522 (9th Cir.

1    1996) (also relied on by Villalobos and ARVCO) and *Tennenbaum v. Deloitte & Touche*, 77

2    F.3d 337 (9th Cir. 1996), for the proposition that a mere promise or intention to subsequently

3    waive a privilege, without an actual subsequent disclosure of privileged communications, does

4    not waive the right to assert the privilege, including the Fifth Amendment. (*Id*. at 2.) In other

5    words, it is the disclosure and not the mere promise to disclose that results in a waiver of rights.

6    Here, in order for Fox to have waived his right to invoke the Fifth Amendment, he argues that he

7    must have actually testified at his deposition related to the investment disclosure letters. (*Id*. at

8    7.)

9         Finally, Fox argues that the statements he made in interviews with the United States

10   Attorney's Office did not waive his right to assert the Fifth Amendment at a subsequent

11   deposition in this civil action because of the "single proceeding" rule which provides that a

12   waiver of the Fifth Amendment is limited to the particular proceeding in which the waiver

13   occurs. (*Id*. at 14.)

14   **D. Reply of ARVCO and Villalobos (Doc. # 84)**

15        ARVCO and Villalobos maintain that Fox expressly waived his right to invoke the Fifth

16   Amendment with his express statement at the June 27, 2014 hearing. (Doc. # 84 at 2.) Citing

17   *United States v. Jenkins,* 785 F.2d 1387, 1393 (9th Cir. 1986) and *Davis v. Fendler*, 650 F.2d

18   1154 (9th Cir. 1981), ARVCO and Villalobos argue that an individual may waive a privilege

19   inadvertently. (*Id*.) ARVCO and Villalobos point out that in *Davis,* the court found a waiver of

20   the Fifth Amendment rights when the defendant failed to timely raise an objection based on the

21   Fifth Amendment in response to a set of interrogatories, and contend that Fox's express statement

22   that he would not be invoking the Fifth Amendment surely constitutes a waiver. (*Id*.)

23        ARVCO and Villalobos also contend that the concept of "judicial estoppel" requires that

24   Fox be compelled to testify without relying on the Fifth Amendment in this case. (*Id*. at 3.) They

25   reason that Fox agreed to waive his right to invoke the Fifth Amendment in exchange for the

26   benefit of having his deposition delayed, and having received such benefit, he should be

27   estopped from reversing his position at this time. (*Id*.) ARVCO and Villalobos rely on *Ah Quin

28   v. County of Kauai Dept. of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) and *Hiott v. Superior*

1  *Court,* 16 Cal.App.4th 712, 720-21 (1993) to support this position. (*Id.*)

2  Next, ARVCO and Villalobos claim that Fox may not rely on the fact that he was

3  unrepresented at the June 27, 2014 hearing to support his argument, and point out that it is

4  apparent that each of Fox's filings in this case were drafted by counsel, and in fact Fox has had

5  access to counsel with respect to this issue all along. (*Id.*) In a footnote, ARVCO and Villalobos

6  point out that the State Bar of Nevada has issued an opinion that prohibits "ghost lawyering." (*Id.*

7  at n. 2, citing State Bar of Nevada Formal Opinion 34, dated December 11, 2006.)

8  ARVCO and Villalobos then address the *Tennenbaum* case, relied on by Fox, and argue

9  that case is distinguishable because it arose in the attorney-client privilege context, where the

10  focus is on the holder's disclosure and not on the intent to waive the privilege. (*Id.* at 4.) ARVCO

11  and Villalobos maintain that under *Anderson*, Fox's express statement that he intended to waive

12  his right to invoke the Fifth Amendment results in a broad waiver of his right under the Fifth

13  Amendment.

14  **E. Memorandum of the United States (Doc. # 87)**

15  On October 2, 2014, the United States filed a memorandum asserting its position on this

16  issue. (Doc. # 87.) The United States confirms that Fox was given limited use immunity for his

17  grand jury testimony, and has not been given an additional grant of immunity; therefore, he

18  retains his constitutional right to invoke the Fifth Amendment privilege against self-

19  incrimination in any other proceeding. (*Id.* at 4.)

20  The United States, like Fox, argues that Fox retains his right to invoke the Fifth

21  Amendment in any civil deposition unless and until he voluntarily chooses to testify. (*Id.* at 11.)

22  The United States, also like Fox, relies on *Tennenbaum,* in support of its position that mere intent

23  to waive a privilege, without a disclosure, does not constitute a waiver of the privilege. (*Id.*)

24  The United States notes that in *Anderson*, the Ninth Circuit expressly declined to address

25  whether a promise to waive the Fifth Amendment constitutes a waiver, but it cited *Tennenbaum*,

26  which held that a written promise to waive the attorney-client privilege without the actual

27  disclosure of the privileged information did not constitute a waiver of the privilege. (*Id.*) In

28  *Anderson*, the Ninth Circuit indicated that Anderson not only promised to waive the privilege but

1   also testified and produced documents without asserting the privilege. (*Id.*)

2        Finally, the United States echoes Fox's argument that his testimony before the grand jury

3   and subsequent interviews in the criminal case do not constitute a disclosure or waiver in this

4   proceeding, relying on *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978),

5   *Mitchell v. United States*, 526 U.S. 314, 321 (1999), and *United States v. Licavoli*, 604 F.2d 613,

6   623 (9th Cir. 1979).

7        The United States therefore asks that the court permit Fox to invoke his privilege, and

8   defer further consideration of his deposition until after the criminal trial is completed. (*Id.* at 4.)

9   **F. Rohatiner Declaration (Doc. # 88)**

10        Mr. Rohatiner filed a declaration on October 3, 2014 in response to the United States'

11   memorandum. (Doc. # 88.) Mr. Rohatiner contends that the United States' memorandum is really

12   an opposition to the motion to compel and was filed untimely, seven weeks after the motion was

13   filed and four days before the hearing, and was filed without authority as the United States was

14   only granted leave to intervene for the limited purpose of seeking a stay of discovery. He

15   requests that the court not consider the memorandum, or if the court is inclined to consider it,

16   that the court continue the hearing so that he can file a response.

17   **G. SEC Filing (Doc. # 90)**

18        In its filing, the SEC represents that it also seeks Fox's deposition, but "sees no reason to

19   force him to testify now, given his express desire to assert his 5th Amendment rights," pointing

20   out that the discovery cutoff in this case is April 17, 2015 and the trial in the pending criminal

21   matter has been set for February 23, 2015. (Doc. # 90 at 2, 3.) The SEC reiterates the United

22   States' point that Fox was granted qualified use immunity in connection with his grand jury

23   testimony and as such, retains his right to invoke his privilege against self-incrimination in this

24   proceeding, absent a further grant of immunity from the Department of Justice. (*Id.*) The SEC

25   also asks the court to consider the United States' submission.

26   **H. Fox's Counsel**

27        Fox's filings made in this action were ostensibly made in his capacity as a pro se litigant;

28   however, the court was apprised through briefing on this motion and Fox's previous motion that

1    Fox had in fact sought the assistance of counsel regarding this issue, and it appeared that Fox's

2    filings were actually drafted by counsel, and not by Fox himself, as the documents state. As

3    indicated above, the reply brief of ARVCO and Villalobos makes note of this, and references an

4    ethical opinion by the Nevada State Bar regarding "ghost-lawyering." The court will address this

5    topic, *infra,* but notes that on October 6, 2014, Mr. Bitzer did file a verified petition for

6    permission to practice pro hac vice in this district. (Doc. # 89.) The court provisionally approved

7    this petition pending receipt of a certificate of good standing from the State Bar of California.

8    (Doc. # 91.)

9          The court will now turn to a discussion of the pertinent issues raised by the filing of the

10    motion to compel.

## II. DISCUSSION

12    **A. Memoranda Filed by the United States and SEC**

13          The court is confronted with several issues as a result of the United States' filing,

14    including: (1) the United States was only granted leave to intervene in this action for the limited

15    purpose of seeking a stay of discovery pending the conclusion of the criminal case (*see* Doc. # 41

16    at 7:25-27; Doc. # 53), and did not seek leave of court to file this document; and (2) the United

17    States filed its memorandum on October 2, 2014, over six weeks after the motion to compel was

18    filed, and just days before the October 7, 2014 hearing. This was done despite the fact that the

19    Local Rules only contemplate the filing of a response to a motion within fourteen days of the

20    filing of a motion other than a motion for summary judgment and a reply brief within seven days

21    of service of the response. LR 7-2(b), (c).

22          At the hearing on this motion, the court apprised the United States of these concerns and

23    allowed counsel for the United States an opportunity to respond. In addition, Mr. Rohatiner

24    represented that he did have an opportunity to review the United States' filing prior to the hearing

25    and was prepared to respond to the extent it argued that Fox's representation at the June 27, 2014

26    hearing did not constitute a waiver. Ultimately, the court granted the United States' oral motion

27    for leave of court to have its filing considered, and the court advised counsel for the United

28    States' that any future filings in this case shall be filed with leave of court and within the

1    parameters of the Local Rules.

2         The SEC's filing was also filed outside the time parameters contemplated by Local Rule

3    7-2. After advising the SEC's counsel that its filings shall be compliant with the Local Rules, the

4    court also granted the SEC's oral motion for the court to consider its filing.

5    **B. Fox's Filings**

6         The court also discussed the issue raised in the reply brief of ARVCO and

7    VILLALOBOS that Fox's filings in this action appeared to be written by an attorney when his

8    filings were ostensibly made by a Fox as a pro se litigant. The court advised Fox and his counsel,

9    who appeared at the hearing after subsequently filing his petition for permission to practice pro

10   hac vice in this district, of the State Bar of Nevada's Formal Opinion 34, revised on June 24,

11   2009, which discusses the ethical ramifications of "ghost-lawyering" in Nevada.

12        The opinion defines "ghost-lawyering" as occurring "when a member of the bar gives

13   **substantial** legal assistance, by drafting or otherwise, to a party ostensibly appearing *pro se*,

14   with the lawyer's actual or constructive knowledge that the legal assistance will not be disclosed

15   to the court." (Emphasis original.) The opinion goes on to state that "ghost-lawyering" "**is**

16   **unethical unless** the 'ghost-lawyer's' assistance and identity are disclosed to the court by the

17   signature of the 'ghost-lawyer' under Rule 11 upon every paper filed with the court for which the

18   'ghost-lawyer' gave 'substantial assistance' to the *pro se* litigant by drafting or otherwise."

19   (Emphasis original.) The opinion provides that when such activity comes to light, the court may

20   exercise its discretion: "(A) to require the *pro se* litigant to disclose whether the litigant is being

21   assisted by a 'ghost-lawyer'; (B) if so, to require the *pro se* litigant to disclose the identity of the

22   'ghost lawyer'; and (C) to require the 'ghost-lawyer' to appear and sign all pleadings, motions and

23   briefs in which the 'ghost-lawyer' assisted."

24        When the court raised this issue at the October 7, 2014 hearing, Fox's counsel,

25   Mr. Bitzer, as well as Fox himself, acknowledged that Mr. Bitzer had drafted the filings.

26   Mr. Bitzer did represent to the court that the filings were Rule 11 compliant, and confirmed that

27   he had submitted his application to appear in this district pro hac vice in his capacity as Fox's

28   counsel. The court admonished Fox and Bitzer regarding the impropriety of "ghost-lawyering,"

1   but ultimately found Mr. Bitzer's representations to be satisfactory under the circumstances.

2   Therefore, no further action need be taken with respect to the "ghost-lawyering" issue.

3   **C. Did Fox Waive His Right to Invoke his Fifth Amendment Privilege Against Self**

4   **Incrimination at his Deposition in this Action When he Stated at the June 27, 2014 Hearing**

5   **that He Would Not Be Invoking the Fifth Amendment?**

6   The court will now turn to the central issue raised by the motion to compel filed by

7   ARVCO and Villalobos.

8   **1. Application of the Privilege**

9   While it is well settled that the government has the power to compel testimony in court or

10   before a grand jury or agency, *see Kastigar v. U.S.*, 406 U.S. 441, 444 (1972) (citing *Blair v.*

11   *United States*, 250 U.S. 273 (1919)), that power is not absolute and is subject to several

12   exceptions, the most important of those being the Fifth Amendment privilege against compulsory

13   self-incrimination. *Id*. The Fifth Amendment privilege against compulsory self-incrimination

14   provides: "[n]o person ... shall be compelled in any criminal case to be a witness against

15   himself[.]" U.S. Const. amend V. This privilege "can be asserted in any proceeding, civil or

16   criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any

17   disclosures which the witness reasonably believes could be used in a criminal prosecution or

18   could lead to other evidence that might be so used." *Kastigar,* 406 U.S. at 444-445 (citations

19   omitted).

20   **2. *Tennenbaum and Anderson***

21   There is no question that the privilege would be applicable to questions asked of Fox

22   regarding the preparation, execution and disposition of the investment disclosure letters. The

23   issue raised by this motion to compel is whether Fox waived his right to invoke the privilege

24   when he stated at the June 27, 2014 hearing that he was not going to assert the Fifth Amendment

25   privilege against self-incrimination at his deposition. The cases most directly on point with

26   respect to this issue are *Tennenbaum v. Deloitte and Touche*, 77 F.3d 337 (9th Cir. 1996) and

27   *U.S. v. Anderson*, 79 F.3d 1522 (9th Cir. 1996), decided by the Ninth Circuit roughly three

28   weeks apart.

1        In *Tennenbaum*, the Ninth Circuit confronted "whether a promise by a holder of the

2  attorney-client privilege to waive the privilege, contained in a written settlement agreement in

3  one lawsuit, waives the holder's right to claim that privilege in a separate lawsuit, in the absence

4  of the holder's disclosure of a privileged communication." *Tennenbaum*, 77 F.3d at 338-339. The

5  Ninth Circuit held that the "mere agreement to waive the privilege in [one] action,

6  unaccompanied by a disclosure of privileged documents, did not constitute a waiver of [the] right

7  to claim that privilege subsequently." *Id.* at 339. The Ninth Circuit noted that the lawsuit was a

8  federal question case, therefore, the court was required to look first at the federal common law of

9  privilege, and then to state privilege law (California in that case) "if it is enlightening." *Id.* The

10 court also sought guidance from a proposed Federal Rule of evidence. *Id.*

11        The Ninth Circuit commented:
          The doctrine of waiver of the attorney-client privilege is rooted in notions of
12        fundamental fairness. Its principal purpose is to protect against the unfairness that
          would result from a privilege holder selectively disclosing privileged
13        communications to an adversary, revealing those that support the cause while
          claiming the shelter of the privilege to avoid disclosing those that are less
14        favorable.

15 *Id.* (citation omitted). As such, "the focal point of privilege waiver analysis should be the holder's

16 disclosure of privileged communications to someone outside the attorney-client relationship, not

17 the holder's intent to waive the privilege." *Id.* The court noted another decision, *Weil v.*

18 *Investment/Indicators, Research & Management,* 647 F.2d 18 (9th Cir. 1981), where it held that

19 the "disclosure of privileged communications during discovery waives the holder's right to claim

20 the privilege as to communications about the matter actually disclosed, despite the holder's 'bare

21 assertion that it did not subjectively intend to waive the privilege' when it made the disclosure."

22 *Id.* As such, *Tennenbaum* held that "mere intention to waive the privilege, evidenced only by a

23 promise ... does not waive the privilege." *Id.* The court stressed that "[t]he triggering event is

24 disclosure, not a promise to disclose." *Id.*

25        ARVCO and Villalobos argue that this case is inapposite because it involves application

26 of the attorney-client privilege and relies on the California Evidence Code and an unadopted

27 proposed Federal Rule of Evidence.

28        With respect to the latter argument, the Ninth Circuit made all of the findings outlined

- 13 -

above *before* it turned to the California Evidence Code and proposed Federal Rule of Evidence. The findings critical to this court's analysis were based on federal case authority.

Turning to the former argument, the court notes that approximately three weeks after *Tennenbaum* was decided, the Ninth Circuit issued another opinion in *U.S. v. Anderson*, 79 F.3d 1522 (9th Cir. 1996), that arose in the context of the Fifth Amendment. In *Anderson*, a criminal defendant argued that his prior testimony and production of documents in a state court proceeding could not be used against him in the subsequent federal criminal prosecution. *Anderson*, 79 F.3d at 1524. There, the California corporations' commissioner filed a civil action against various corporate entities and individuals, including Anderson, and sought to enjoin them from violating California securities laws. *Id*. The state court issued an injunction appointing a receiver over the entities and Anderson and ordered them to turn over all records and documents related to their assets. *Id*. Relying on the injunction, the receiver subpoenaed documents and testimony from Anderson and he asserted his Fifth Amendment privilege against self-incrimination and refused to answer most questions in his deposition and refused to produce the documents requested via the subpoena. *Id*. The receiver sought to have Anderson held in contempt. *Id*.

Anderson's counsel then wrote a letter to counsel for the receiver stating that Anderson had agreed to waive his Fifth Amendment privilege in the state court proceeding, and was willing to produce documents and testify in deposition. *Id*. The parties also signed a stipulation to this effect. *Id*. Anderson was later indicted in a federal criminal proceeding, and filed a motion for a *Kastigar* hearing, claiming that the government should have to show that the information used in the federal prosecution was derived from sources other than his testimony and document production in the state court proceeding because he contended that these sources were immunized pursuant to a California Corporations Code section or that his testimony was compelled by the threat of contempt. *Id*. at 1525. His request was denied, with the court finding that his testimony was not immunized because the California Corporations Code section was not self-executing, and the superior court did not order him to testify over an asserted claim of privilege. *Id*. The court found that Anderson waived his Fifth Amendment privilege, and

Anderson appealed. *Id.*

The Ninth Circuit described Anderson as making two arguments, only the first of which is particularly relevant to this case—that his prior testimony and production were immunized by state statute, and under *Kastigar v. United States*, 406 U.S. 441 (1972) and *Murphy v. Waterfront Commission*, 378 U.S. 52 (1964), and could not be used either directly or derivatively in his subsequent prosecution. *Id.* at 1526. To be successful on this claim, Anderson simply had to show the prior testimony was compelled by grant of immunity, and the government would then have the burden of demonstrating the evidence it intends to use is derived from an independent source. *Id.*

The court began its analysis with the proposition that the Fifth Amendment privilege is "'not ordinarily self-executing and must be affirmatively claimed by a person whenever self-incrimination is threatened.'" *Id.* at 1527 (quoting *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986)). In fact, "'[a]n individual may lose the benefit of the privilege inadvertently, without a knowing and intelligent waiver.'" *Id.* (quoting *Jenkins*, 785 F.2d at 1393). The court then confirmed that Anderson waived his Fifth Amendment privilege when his counsel sent the letter to counsel for the receiver indicating as much, signed a stipulation to that effect, *and testified and produced the documents "without asserting his fifth amendment privilege as promised in his counsel's letter.*" *Id.* (emphasis added).

The language italicized above is particularly important. ARVCO and Villalobos claim in that it was enough that *Anderson*'s counsel made a representation in the letter to counsel for the receiver that he would waive his Fifth Amendment privilege, and the waiver did not require the additional step of the subsequent disclosure at his deposition and production of documents. The Ninth Circuit's language suggests the contrary as it discussed the waiver in the context of both the written representation to waive the Fifth Amendment privilege *and* the subsequent disclosure of testimony and documents.

If the waiver was complete at the time the letter was written to counsel for the receiver, the Ninth Circuit did not need to discuss the fact that Anderson also testified at his deposition and produced documents *without then asserting the Fifth Amendment privilege*. This language

suggests that in spite of his counsel's representation that Anderson intended to waive his Fifth Amendment privilege at the deposition, he still could have chosen to invoke the Fifth Amendment privilege at the deposition.

Importantly, *Anderson* included a footnote following this sentence, stating: "We need not address whether the letter alone-a promise to waive the fifth amendment privilege-would be sufficient to constitute a waiver." *Id*. at n. 7. The footnote contains a "cf" citation to *Tennenbaum* and provides a parenthetical reference to the holding of *Tennenbaum* that a "written promise to waive attorney client privilege absent actual disclosure of privileged information did not constitute a waiver of the privilege." *Id*. (citing *Tennenbaum*, 77 F.3d 337). This indicates that the court need not address whether the letter alone waived the privilege, because this issue had already been addressed in *Tennenbaum*, just three weeks earlier, where it was concluded that a mere promise to waive was not sufficient; instead, actual disclosure is required. *Anderson* went on to point out that Anderson "not only promised to waive the privilege against self-incrimination but also did in fact testify and produce documents without asserting the privilege." *Id*. As such, it was clear that Anderson waived his Fifth Amendment privilege when he made the subsequent disclosure of testimony and documents.

Returning momentarily to ARVCO's and Villalobos' argument that *Tennenbaum* is distinguishable because it involved the attorney-client privilege, the court points out that *Anderson* did not appear to find this to be a distinction with significance. Otherwise, they would not have given the "cf" citation to *Tennenbaum*.

In sum, *Anderson* and *Tennenbaum* lead the court to conclude that Fox's oral representation at the June 27, 2014 hearing that he was not going to invoke his Fifth Amendment privilege at the deposition does not constitute a waiver of the Fifth Amendment privilege because there was no subsequent disclosure.

### 3. *Davis & Hiott Are Inapposite*

#### a. *Davis*

The cases cited by ARVCO and Villalobos in their reply brief are inapposite. First, they rely on *Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981). In this case, interrogatories were

- 16 -

propounded to a party who responded with various objections, but did not include any objection based on the assertion of a privilege. *Davis*, 650 F.2d at 1157. Nearly a year later, a motion to compel was filed. *Id*. The responding party filed a motion for protective order, arguing that the civil case should be stayed pending resolution of a similar criminal proceeding, so that the responding party's Fifth Amendment privilege against self-incrimination would not be abridged. *Id*. at 1158. The district court granted the motion to compel and denied the motion for protective order, and told the responding party to answer the interrogatories or set forth specific claims of privilege for the court's determination. *Id*. In the compelled responses, the responding party included a blanket claim of privilege to almost every interrogatory. *Id*. After unsuccessful efforts to meet and confer and resolve this issue, the propounding party moved to strike the answers and to enter default judgment. *Id*. The motion to strike was granted, and default judgment was entered. *Id*. The responding party appealed. *Id*.

*Davis* pointed out that the responding party first mentioned the Fifth Amendment privilege *fifteen months after the interrogatories were propounded*. *Id*. at 1160. The court likewise pointed out that this was well after he knew he was under investigation and had in fact been indicted in state court, had a criminal trial and was convicted. *Id*. The court specifically pointed out that under Federal Rule of Civil Procedure 33, which governs interrogatories, absent an extension of time, the failure to object to interrogatories within the time proscribed by the rule constitutes a waiver, even in the context of an objection based on privilege. *Id*. (citing Fed. R. Civ. P. 33 and *United States v. 58.16 Acres of Land*, 66 F.R.D. 570 (E.D. Ill. 1975)). *Davis* reiterated that the Fifth Amendment privilege is not self-executing, and can be waived if it is not timely asserted. *Id*. (citing *Maness v. Meyers*, 419 U.S. 449 (1975)).

Also at play in *Davis* was the fact that the responding party included a blanket claim of privilege, without giving the district judge sufficient information to determine whether the Fifth Amendment was implicated. When given an opportunity to include additional information, the responding party failed to do so, and the Ninth Circuit determined the district court judge did not abuse his discretion in imposing the sanction of default judgment via Federal Rule of Civil Procedure 37 under these circumstances. *Id*. at 1160-61.

ARVCO and Villalobos argue that *Davis* stands for the proposition that Fox's express waiver should be found to constitute a waiver, if a mere failure to timely object to interrogatories constitutes a waiver. (Doc. # 84 at 2-3.)

Their argument is misplaced. The issue in *Davis* was not whether the party waived the Fifth Amendment privilege by making an express assertion that he was going to do so, as it is here. In fact, the court in *Davis* did not make a waiver determination at all. It discussed the fact that a party can waive a privilege if it is not timely asserted in response to interrogatories; however, no ultimate waiver determination was made. Rather, this case was focused on whether the district court abused its discretion by imposing the sanction of entry of default judgment based on the responding party's failure to comply with a court order to provide complete answers or objections to interrogatories.

Even if the court construed this case as holding that a waiver occurred when the responding party failed to timely assert a specific privilege objection, this does not translate to a finding of waiver in this case. As *Davis* discussed, the timing of the assertion of an objection to an interrogatory is governed by Federal Rule of Civil Procedure 33, which provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

In this case, the waiver issue has arisen in the context of the deposition of Fox, a non-party witness. In the case of a deposition, the witness will not know whether or not his Fifth Amendment rights are implicated until a question is posed. As such, the time for the assertion of the Fifth Amendment privilege is in response to a particular question posed at the deposition that implicates the deponent's Fifth Amendment rights. Here, the deposition has not yet taken place, so there can be no argument that Fox has not timely asserted the privilege.

### b. *Hiott*

ARVCO and Villalobos also rely on a case from the California Court of Appeal, *Hiott v. Superior Court*, 16 Cal.App.4th 712 (1993), for the proposition that a mere promise to waive the Fifth Amendment privilege, without subsequent disclosure, is sufficient to constitute a waiver. (Doc. # 84 at 5.)

1    In *Hiott,* the plaintiff in a personal injury, slip and fall action was served with a request

2    for production of documents. *Hiott*, 16 Cal.App.4th at 715. Her response included a statement

3    that her "referring attorney [had] a video of plaintiff while in the hospital" and notified the

4    opposing party that a copy of the video could be obtained at the opposing party's own expense.

5    *Id*. Opposing counsel requested the video and was told that the plaintiff's attorney-brother, who

6    had done the videotaping, would furnish the tape to them. *Id*. In a subsequent statement, the

7    plaintiff's attorneys reversed course, and said they had reviewed the tape and determined it

8    contained attorney-client privileged information and it would no longer be provided. *Id*. The

9    defendant filed a motion to compel. *Id*. The trial court ordered a referee to view the tape and

10   determine whether it in fact contained attorney-client privileged information, and if it did, found

11   that the plaintiff had waived the privilege. *Id*. at 716. The referee concluded that the tape did

12   include attorney-client privileged information, but that the plaintiff had waived the privilege by

13   consenting under oath to disclose the tape without asserting the privilege. *Id*.

14   The California Court of Appeal concluded that the tape did indeed contain attorney-client

15   privileged information. *Id*. at 718. The California Court of Appeal also concluded that the

16   plaintiff waived the privilege by consenting to its disclosure. *Id*. at 719. It came to this

17   conclusion based on a provision of California law which specifically states that the privilege is

18   waived when the holder consents to disclosure. *Id*.

19   First, this court is not bound by a decision of the California Court of Appeals. Second,

20   there is no federal statute or Nevada statute which defines a waiver as specifically including

21   consent to disclosure which would compel the same conclusion in this case as to Fox.

22   **4. Fox Did Not Waive His Right to Invoke the Fifth Amendment Privilege by**

23   **Testifying Before the Grand Jury or Providing Interview Statements**

24   Nor did Fox waive his right to invoke the Fifth Amendment privilege against self-

25   incrimination in this civil proceeding by testifying before the grand jury or providing interview

26   statements to the United States Attorney's Office and California Attorney General's Office.

27   Immunity statutes "seek a rational accommodation between the imperatives of the

28   privilege and the legitimate demands of government to compel citizens to testify." *Id*. at 446.

"The existence of these statutes reflects the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." *Id.*

"[A] witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. U.S.*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States*, 240 U.S. 367, 373 (1951); *see also U.S. v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) ("It is settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs."). For example, "voluntary testimony before a grand jury does not waive the privilege against self-incrimination at trial." *Licavoli*, 604 F.2d at 623 (citation omitted).

The federal witness immunity statute, 18 U.S.C. § 6002, states that when a witness is compelled by district court order to testify over a claim of the Fifth Amendment privilege against compulsory self-incrimination, "the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002. The Supreme Court has held that this type of immunity "is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege." *Kastigar*, 406 U.S. at 453.

As such, Fox did not waive his Fifth Amendment privilege when he gave immunized testimony relative to the criminal case before the grand jury, as that was clearly a separate proceeding. Fox similarly did not waive the privilege when he gave statements to the United States Attorney's Office in connection with the criminal proceeding, or to the California Attorney General's Office in connection with its proceeding(s).

**5. Fox is Not Judicially Estopped from Invoking his Fifth Amendment Privilege in this Civil Action**

Finally, the court will address the judicial estoppel argument asserted in the reply brief of

1    ARVCO and Villalobos. They contend that Fox agreed to waive the Fifth Amendment privilege

2    so that his deposition could be delayed, and because he obtained the benefit of the delay he

3    should be judicially estopped from reversing his position at this point. (Doc. # 84 at 3.) They rely

4    on *Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) to support

5    their position. (*Id*.)

6          As *Ah Quin* points out, "[j]udicial estoppel is an equitable doctrine invoked by a court at

7    its discretion." *Ah Quin*, 733 F.3d at 270 (internal quotation marks and citation omitted). "[I]ts

8    purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately

9    changing positions according to the exigencies of the moment." *Id*. (internal quotation marks and

10   citation omitted). Relevant considerations in applying the doctrine include, but are not limited to:

11   whether the party is taking a position that is clearly inconsistent with an earlier position; whether

12   the court's acceptance of the later position would create a perception that the court was misled as

13   to the earlier position; and whether the party asserting the position will derive an unfair

14   advantage or impose an unfair detriment on the opposing party. *Id*. (citation omitted).

15         While the court is not pleased that Fox ultimately decided to take a position inconsistent

16   with his representation at the June 27, 2014 hearing that he would not be invoking the Fifth

17   Amendment privilege, the court's analysis of the law governing this subject, *supra*, demonstrates

18   that he was within his rights to do so. Without a subsequent disclosure, the court finds that Fox

19   did not waive his right to invoke the Fifth Amendment privilege against self-incrimination at the

20   June 27, 2014 hearing, and the court will not force him to do so under the judicial estoppel

21   doctrine. As the Supreme Court commented: "the values which underlie the privilege [against

22   self-incrimination" should be zealously safeguarded. *Kastigar*, 406 U.S. at 447. Therefore, the

23   court will not exercise its discretion to find that Fox is judicially estopped from asserting the

24   privilege at his deposition in this case.

25   ///

26   ///

27   ///

28   ///

1

## III. CONCLUSION

2          For the foregoing reasons, the motion to compel filed by ARVCO and Villalobos

3   (Doc. # 76) is **DENIED**.

4   **IT IS SO ORDERED**.

5

6   Dated: October 10, 2014.

_____
7                                        WILLIAM G. COBB
                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28